UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
02 NOV -7 PM 1:51

| | |
|---|---|
| FELECIA D. ELLSBERRY, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. CV-02-S-1914-S |
| CITY OF WARRIOR, ALABAMA, | ) |
| Defedant. | ) |

**ENTERED**

NOV - 7 2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

**MEMORANDUM OPINION**

Plaintiff, Felcia Ellsberry, alleges that her former employer, the City of Warrior, Alabama, subjected her to a sexually hostile work environment and retaliation, both of which eventually caused her to resign her employment, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, as well as 42 U.S.C.§ 1983 and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Plaintiff also asserts supplemental state law claims for invasion of privacy and intentional infliction of emotional distress. *See* 28 U.S.C. § 1367. The action presently is before the court on defendant's motion to dismiss all of these claims (doc. no. 4).

**I. STANDARD OF REVIEW**

The Federal Rules of Civil Procedure require that a complaint contain only a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)[1]). Consequently, a complaint should not be

---

[1] Federal Rule of Civil Procedure 8(a)(2) provides: "A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief...." *See also Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364 (11th Cir. 1997), stating:



dismissed for failing to state a claim upon which relief can be granted, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46, 78 S.Ct. at 102.[2] When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (emphasis in original) (citation omitted).

Thus, the threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss are "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir.

---

The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of [a plaintiff's] claim for relief. It is read alongside Fed.R.Civ.P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. ...

*Id.* at 1368-69 (citation omitted); *see also Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

[2] *See also, e.g., Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (holding that a complaint should be dismissed for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations" of the plaintiff's complaint); *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc) (quoting *Conley*, 355 U.S. at 45-46, 78 S.Ct. at 102); *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992) ("A complaint may not be dismissed unless the plaintiff can prove no set of facts which would entitle him to relief."); *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988) ("[T]he 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'") (quoting *Conley*, 355 U.S. at 45-46, 78 S.Ct. at 102; *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (same).

1985). Such motions accordingly are "viewed with disfavor and rarely granted." *Brooks*, 116 F.3d at 1369 (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969), and *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir. 1968)). Even so,

> the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, for
>> [i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.

*Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984) (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.13, at 8-118 (2d ed. 1984)).

Here, however, the court has more than pleadings for consideration. Both parties have filed briefs, supplemented with evidentiary submissions. If matters outside the pleadings are presented to and considered by the court when ruling upon a Rule 12(b)(6) motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(b), Fed. R. Civ. P.; *see also, e.g., Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D. D.C. 1986)(Richey, J.). This allows the court's inquiry to be fact specific and allows the nonmovant to demonstrate the existence of any genuine issues of material fact. *But see Denis v. Liberty Mutual Insurance Co.*, 791 F.2d 846, 850 (11th Cir. 1986) (recognizing an exception to the requirement that the court afford plaintiff notice of its intent to convert and an opportunity to supplement the record); *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir. 1985) (same).

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is

proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, briefs, evidentiary submissions, and oral arguments presented at the October 24, 2002 motion docket in Birmingham, this court is of the opinion that defendant's "motion to dismiss" should be granted as to plaintiff's state-law claims of intentional infliction of emotional distress and invasion of privacy, but denied as to all of plaintiff's remaining claims.

## I. SUMMARY OF FACTS

The facts necessary for adjudication of the present motion are summarized in plaintiff's complaint as follows:

> On or about winter of 2000 and 2001, plaintiff's supervisor began a campaign of sexual harassment toward the plaintiff, in that her supervisor allowed the office atmosphere to become inundated with sex, sexual comments and talk, including the display of sexually explicit material. On one occasion, in the office, a certain employee, in the presence of plaintiff's supervisor, removed his penis and tapped his penis on the shoulder of another female employee in the presence of the plaintiff. This was done in late spring of 2001.... Plaintiff reported this sexual activity to the chief of police, a counselman [sic], and to the court clerk for the City of Warrior. Nothing was done. Plaintiff began to receive retaliation from her supervisor after the spring incident with the penis and then plaintiff went on a six week leave of absence. Upon her return, the retaliation from her supervisor began again. Plaintiff finally reported the sex harassment and the retaliation to the Mayor and when he stated that he didn't want to talk about it, plaintiff was forced to resign in late September of 2001.[3]

## II. DISCUSSION

### A.   Plaintiff's Title VII Claims

Defendant moves to dismiss plaintiff's Title VII claims on two grounds: plaintiff did not file her charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the complained-of incidents; and, plaintiff did not file suit within 90 days of receipt of her EEOC notice of right-to sue.

#### 1.   Timeliness of plaintiff's EEOC charge

A plaintiff must satisfy a number of administrative prerequisites before filing a suit based upon Title VII. Foremost among these is the requirement that a charge of discrimination be submitted to the Equal Employment Opportunity Commission within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also, e.g., Alexander v.*

---

[3] Complaint ¶¶ 5(a)-(c).

*Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000) ("No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge.").

> Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies. *See Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir.1999). The first step down this path is filing a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(b) (1994); *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir.2000). For a charge to be timely in a non-deferral state such as Georgia [or Alabama], it must be filed within 180 days of the last discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1) (1994); *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 197 (6th Cir.1995).

*Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).

"Timely filing is a prerequisite to the maintenance of a Title VII action." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555 n.4, 97 S. Ct. 1885, 1887 n.4, 52 L. Ed. 2d 571 (1977) (citing *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 47, 94 S. Ct. 1011, 1019, 39 L. Ed. 2d 147 (1974)). "[T]he purpose of the charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).[4] This prerequisite reflects a congressional intent to encourage voluntary compliance and conciliation, rather than litigation, as the "preferred means" of "eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." *Alexander v. Gardner-Denver Co.*, 415 U.S. at 44, 94 S. Ct. at 1017; *see also Sims v. Trus Joist MacMillan*, 22

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981. *See also Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994), where the Eleventh Circuit observed:

> Generally speaking, the EEOC is charged with the task of investigating allegations of civil discrimination and harassment in the employment context and determining whether there is any reason to believe the allegations are true. Under 42 U.S.C. § 2000e-5, a person who wants to file a lawsuit under Title VII must first file a charge with the Equal Employment Opportunity Commission alleging a Title VII violation and exhaust all remedies provided by the EEOC. If the conciliation efforts are unsuccessful, the EEOC will inform the parties and issue a letter authorizing the complainant to file a Title VII suit.

F.3d 1059, 1063 (11th Cir. 1994) ("Congress clearly intended for the EEOC and the complaining party to attempt a reconciliation of the charge of discrimination before proceeding to federal court, and thus it imposed a time limit during which this reconciliation should occur. . . ."). If a plaintiff fails to file a charge within this 180-day window, her claim may be procedurally barred for untimeliness. *See Delaware State College v. Ricks*, 449 U.S. 250, 256, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980); *Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir. 1998).

Plaintiff filed her EEOC charge on February 28, 2002.[5] Defendant argues that her EEOC charge was not timely because plaintiff complained of incidents of sexual harassment "[o]n or about winter of 2000 and 2001" and "spring of 2001."[6] Taking a broader view, however, the court notes that plaintiff's complaint states that "[p]laintiff began to receive retaliation from her supervisor after the Spring [of 2001] incident . . . and then plaintiff went on a six week leave of absence. Upon her return, the retaliation from her supervisor began again. . . . [P]laintiff was forced to resign [on September 27, 2001]."[7] Construing the facts pleaded as true, and, in a light most favorable to plaintiff, the court must find that plaintiff suffered incidents of retaliation well into the month of September, until her resignation, and thus her EEOC charge was timely-filed (February 28 is 154 days after September 27). The fact that *some* of the incidents of which plaintiff complains *may* later be found to be untimely does not mean that plaintiff cannot set forth a Title VII claim as to later-occurring incidents.

2.      **Timeliness of plaintiff's filing suit**

Defendant also claims that plaintiff has failed to meet another administrative prerequisite to

---

[5] Complaint ¶5(c).

[6] Defendant's brief in support of motion to dismiss, at 3 (quoting Complaint ¶ 5(a)).

[7] Complaint ¶¶ 5(a)-(c).

the maintenance of a Title VII claim; namely, that she did not file the current action with this court within ninety days of receipt of her EEOC notice of right to sue. This court disagrees. Plaintiff's right-to-sue letter was *mailed* on May 6, 2002. The record does not reveal the date upon which she actually received this letter. Plaintiff filed the current action on August 5, 2002. When counting days to determine if an action is timely-filed, the court is guided by the instructions set forth in Federal Rule of Civil Procedure 6(a), which states

> In computing any period of time prescribed . . . by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, *unless it is a Saturday, a Sunday, or a legal holiday* . . . in which event the period runs until the end of the next day which is not one of the aforementioned days.

Fed R. Civ. P. 6(a) (2002) (emphasis added). Applying these guidelines, the court determines that ninety days after May 6, 2002 was Sunday, August 4, 2002. Thus, plaintiff's lawsuit, filed on the following Monday, was timely-filed (even assuming that plaintiff received her EEOC right-to-sue letter on the same day that it was mailed, an assumption which is highly unlikely).

Furthermore, in the absence of proof of the date on which plaintiff actually received the notice of right to sue, federal courts have presumed various receipt dates ranging from three to seven days after the letter was mailed. *See, e.g., Baldwin County Welcome Center. v. Brown*, 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (presuming receipt three days after delivery based upon Fed.R.Civ.P. 6(e)[8]); *Seitzinger v. Reading Hospital & Medical Center*, 165 F.3d 236, 239 (3d Cir.1999) (same); *Sherlock v. Montefiore Medical Center*, 84 F.3d 522, 525-26 (2d Cir.1996) (finding three-day presumption rebutted); *Hunter v. Stephenson Roofing, Inc.*, 790 F.2d 472, 475

---

[8] Federal Rule of Civil Procedure 6(e) states that "[w]henever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served on the party by mail, [three] days shall be added to the prescribed period."

(6th Cir.1986) (applying five-day presumption for social security right-to-sue letter, based upon 20 C.F.R. § 422.210(c) (1985)). However, as noted above, plaintiff's claim was timely-filed, even without the benefit of any such presumption.

**B.      Plaintiff's Equal Protection Claims Brought Pursuant to § 1983**

Defendant argues that plaintiff cannot maintain her § 1983 claims against defendant for two reasons: (1) "plaintiff has failed to identify a City policy or custom that led directly to an alleged violation of her rights"; and (2) plaintiff lacks standing to pursue her claim.[9]

The Equal Protection Clause of the Fourteenth Amendment provides, in part, that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.[10] 42 U.S.C. § 1983 provides a means of seeking redress against state and municipal governmental entities and officials whose conduct under color of state law deprives a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. The statute was enacted for the express purpose of enforcing the Fourteenth Amendment.[11]

---

[9] Defendant's brief in support of motion to dismiss, at 5-6.

[10] In whole cloth, § 1 of the Fourteenth Amendment provides that:

> All person born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[11] *See, e.g., Mitchum v. Foster*, 407 U.S. 225, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972), in which the Supreme Court observed that:

> Section 1983 was originally § 1 of the Civil Rights Act of 1871. . . . It was "modeled" on § 2 of the Civil Rights Act of 1866, . . . and was enacted for the express purpose of "enforc[ing] the provisions of the Fourteenth Amendment." . . . The predecessor of § 1983 was thus an important part of the basic alteration in our federal system wrought in the Reconstruction era through federal legislation and constitutional amendment. As a result of the new structure of law that emerged in the post-Civil Way era —— and especially of the Fourteenth Amendment, which was its centerpiece —— the role of the Federal Government as a guarantor of basis federal rights against state power was clearly established. . . . Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.

In pertinent part, it provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . .

42 U.S.C. § 1983.

When a municipal employee, such as plaintiff, sues her employer for a civil rights violation under § 1983, she must show that she was deprived of a federal right by an official acting under color of state law. *See Almand v. DeKalb County*, 103 F.3d 1510, 1513 (11th Cir. 1997). Additionally, the official must be shown to be acting pursuant to the power that he or she possessed by state authority, and not merely in an individual capacity. *See Edwards v. Wallace Community College*, 49 F.3d 1517, 1523 (11th Cir. 1995). Finally, "the law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior. Rather, only deprivations undertaken pursuant to governmental 'custom' or 'policy' may lead to the imposition of governmental liability." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001) (citations omitted). Here, defendant argues that plaintiff's case should be dismissed because of her failure to identify such a governmental "custom" or "policy."

Obviously, the City of Warrior does not have a written policy condoning sexual harassment and retaliation. In fact, taking the pleadings as true, "[t]he city has no policy against sexual harassment."[12] However, plaintiff's complaint states that

---

*Id.* at 238-39, 92 S. Ct. at 2159-60 (citations and footnotes omitted).

[12] Complaint ¶ 5(a).

> [She] reported the sexual activity to the chief of police, a counselman [sic] and to the court clerk of the City of Warrior. Nothing was done. . . . Plaintiff finally reported the sex harassment and the retaliation to the Mayor and when he stated that he didn't want to talk about it, plaintiff was forced to resign in late September of 2001.[13]

Plaintiff asserts that the defendant's failure to address her complaints constitutes an unofficial municipal policy condoning sexual harassment and retaliation on the part of city officials and employees. For the purposes of this motion, this court must agree, noting that the Eleventh Circuit has held that "a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin*, 261 F.3d at 1308 (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)). Plaintiff's complaint asserts that she complained repeatedly to various municipal officials, and those persons turned a deaf ear to her pleas for assistance. Accordingly, the court must deny defendant's motion to dismiss plaintiff's § 1983 claim on that ground.

## C. Plaintiff's Standing to Bring Her Sexual Harassment Claim

Defendant also claims that plaintiff lacks standing to assert her sexual harassment claim because *another* female employee was tapped on the shoulder with a co-worker's penis, not plaintiff. This argument does not merit any extended discussion. The court simply notes that a co-worker's purposeful and offensive exposure of his penis in the presence of plaintiff can be considered sexual harassment, even if there is no physical contact with the plaintiff. Further, this argument does not explain how plaintiff would not have standing to complain of a work environment "inundated with sex, sexual comments and talk, including the display of sexually explicit material."[14] The court finds

---

[13] *Id.*

[14] Complaint ¶¶ 5(a)-(c).

no reason to dismiss plaintiff's claim for lack of standing.

### D. Plaintiff's State-Law Claims

Plaintiff asserts state-law claims for invasion of privacy and intentional infliction of emotional distress.[15] Defendant contends that, even if plaintiff could set forth a claim for invasion of privacy and intentional infliction of emotional distress, the defendant municipality cannot be held vicariously liable for its employee's intentional torts. Plaintiff's brief does not rebut this argument.

Invasion of privacy is an intentional tort. *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174, 1178 (Ala. 1995) (holding that "the tort of invasion of privacy [is] the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities) (citing *Nipper v. Variety Wholesalers, Inc.*, 638 So. 2d 778 (Ala. 1994); *Phillips v. Smalley Maintenance Services, Inc.*, 435 So. 2d 705 (Ala. 1983); *Alabama Electric Co-Operative, Inc. v. Partridge*, 225 So. 2d 848 (Ala. 1969). Intentional infliction of emotional distress is, by nature, an intentional tort. *See, e.g., Tapscott v. Allstate Insurance Co.*, 526 So. 2d 570, 574 (Ala. 1988). Further, the State of Alabama does not recognize a common-law cause of action for negligent infliction of emotional distress. *Flagstar Enterprises, Inc. v. Davis*, 709 So. 2d 1132, 1141 n.5 (Ala. 1997) (holding that "there is no cause of action in Alabama for negligent infliction of emotional distress"). Defendant, as a municipality, is not liable for the intentional torts of its employees. *Cremens v. City of Montgomery*, 779 So. 2d 1190, 1201 (Ala. 2000) (holding that "[a] municipality cannot be held liable for the intentional torts of its employees"); *see* Ala. Code § 11-47-190 (1992). Therefore, plaintiff's state law claims are due to be dismissed.

---

[15] Complaint ¶¶ 7-8.

## III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is due to be granted as to plaintiff's state-law claims for invasion of privacy and intentional infliction of emotional distress, and denied as to all others. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 7th day of November, 2002.

_____
United States District Judge