IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FELICIA D. ELLSBERRY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. CV 02-P-1914-S |
| ) | |
| CITY OF WARRIOR, ALABAMA ) | ENTERED |
| ) | AUG 18 2004 |
| Defendant. ) | |

## MEMORANDUM OPINION

The court has before it Defendant's Motion for Summary Judgment (Doc. # 28) filed July 7, 2003. The motion is fully briefed and was under submission, without oral argument, as of August 13, 2004. (Doc. # 36). Plaintiff Felicia Ellsberry's amended complaint against the City of Warrior (the "City") asserts Title VII claims for retaliation and hostile work environment in the form of sexual harassment and a 42 U.S.C. § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment. (Doc. # 11).[1] For the reasons outlined below, Defendant's Motion for Summary Judgment is due to be granted because there are no disputed issues of material fact and Defendant has demonstrated that it is entitled to judgment as a matter of law.

**I.   Legal Standards for Evaluating a Summary Judgment Motion**

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts

---

[1] Plaintiff filed a complaint against the City on August 5, 2002 and an amended complaint on October 21, 2002. (Docs. # 1, 11). Although Plaintiff's amended complaint also alleged state law claims against the City, the court granted Defendant's motion to dismiss all of Plaintiff's state law claims in November 2002. (Docs. # 12, 13, 14).

1

about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2747-48 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817 (1973); *Texas Dept. of Community Affairs v. Burdine*, 101 S. Ct. 1089 (1981), as modified by *Desert Palace v. Costa*, 123 S. Ct. 2148 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).[2]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type,

---

[2] Here, Plaintiff has presented only circumstantial evidence of discrimination. (Docs. # 31, 32).

2

for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 93 S. Ct. at 1824-25; *Burdine*, 101 S. Ct. at 1093-94; *Desert Palace*, 123 S. Ct. at 2154-55.

II.     **Relevant Undisputed Facts**[3]

In August 2000, the City of Warrior hired Plaintiff, a female, as a dispatcher. (Doc. # 28, Ex. 2, p. 43-44). Plaintiff worked in that position until October 16, 2000, when she transferred to assistant clerk and then court magistrate at the City Clerk's office. (Doc. # 28, Ex. 2, p. 44). In the Clerk's office, the Plaintiff worked with two other women, one of whom, City Clerk Sherri Bowers, was her immediate superior. (Doc. # 28, Ex. 2). The Mayor was Plaintiff's ultimate supervisor. (*Id.*).

In May 2001, Plaintiff verbally complained to Bowers, the Court Clerk, and the Police Chief regarding alleged sexual conduct that was plainly offensive. (Doc. # 31, Ex. 3; Doc. # 28, Ex. 2, p. 158 -159).[4] Plaintiff also tried to inform the Mayor about the sexual harassment, but he "threw up his hands and said that he didn't want to hear anything about it." (Doc. # 32, pg. 4; Doc. # 31, Ex. 3).[5] Plaintiff told Bowers that, although she had previously acquiesced to activities that made her feel uncomfortable, she no longer would be a part of any personal discussions or acts. (Doc. # 28,

---

[3] If facts are in dispute, they are stated in the manner most favorable to Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[4] Because the court finds that Plaintiff's hostile environment claim is time-barred, the court will not outline all of the conduct and acts that Plaintiff alleges constitute a hostile environment in the form of sexual harassment. *See* discussion *infra* Section III.A.

[5] The City disputes this fact and maintains that the Mayor first learned of the Plaintiff's allegations of sexual harassment and retaliation in September 2001 when Plaintiff filed an internal grievance with the City and resigned. (Doc. # 28, Ex. 7). For purposes of this motion, the court views the evidence in the light most favorable to Plaintiff.

Ex. 2, p. 158-59). After the conversation with Bowers, Plaintiff was never asked by Bowers again to do any of the things about which she had complained, although Plaintiff felt that Bowers "changed in the way that she was treating me" and "was rude." (Doc. # 28, Ex. 2 , p. 159, 225).

Plaintiff identifies four ways in which she alleges Bowers retaliated against her after her complaints of sexual harassment: (1) Bowers stopped speaking to Plaintiff and "began to write down what she wanted me to do" even though she had given her written instructions before, (Doc. # 28, Ex. 2 , p. 160); (2) Bowers "on one occasion . . . spilled some water on [Plaintiff's] desk . . . and [when] she was trying to help dry up the water," she threw away one of Plaintiff's checks that had gotten damp, (Doc. # 28, Ex. 2 , p.161), (3) Bowers "put some mail on [Plaintiff's] desk and slammed it down and told [Plaintiff] . . . when you have time, can you look through this mail, because some people in here are trying to do some work," (Doc. # 28, Ex. 2 , p. 219-20), and (4) Bowers began checking Plaintiff's time cards when she had not previously done so. Plaintiff was not disciplined as a result of or in connection with any of these occurrences. (Doc. # 28, Ex. 2 , p. 418).

On August 6, 2001, the Plaintiff faxed a letter to United Health Care ("United") in application for a position with that company. (Doc. # 28, Ex. 3). On September 19, 2001, the Plaintiff formally filled out a United job application and was offered the job which paid about twice as much as her City position. (Doc. # 28, Ex. 2, p. 44, 46, 52-53; Ex. 4; Ex. 5; Ex. 6; Ex. 15). Plaintiff's application to United states her reason for leaving the City was to "[s]eek a position with substantial opportunity to grow." (Doc. # 28, Ex. 4).

On September 27, 2001, Plaintiff resigned from the City and filed a grievance, pursuant to the City's Grievance Policy, alleging sexual harassment and retaliation. (Doc. # 28, Ex. 2 , p. 148-

49).[6] The City conducted an investigation of the Plaintiff's claims, including interviews of City employees and officials and a 145-page sworn statement given by the Plaintiff to the City attorneys. (Doc. # 28, Ex. 7; Ex. 2, p. 204; Ex. 13).

On February 28, 2002, the Plaintiff filed a Charge of Discrimination with the EEOC. (Doc. # 28, Ex. 1).

### III.   Applicable Substantive Law and Discussion

#### A.   Title VII Hostile Environment in the Form of Sexual Harassment

The filing of a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged unlawful employment practice is a condition precedent to the bringing of a Title VII civil action. 42 U.S.C. § 2000e-5(e). For the reasons outlined below, the court finds that summary judgment is due to be granted on Plaintiff's hostile environment claim because it is time-barred.

For purposes of determining whether a Plaintiff's complaint has been timely filed, each discrete retaliatory or discriminatory act "such as termination, failure to promote, denial of transfer, or refusal to hire," constitutes a separate actionable "unlawful employment practice" which "occurred" on the day that it "happened." *National R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2071-73 (2002). The Supreme Court has made clear that "each discrete discriminatory act starts a new clock for filing charges alleging that act" and "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 122 S.Ct.

---

[6] Plaintiff had previously filed a grievance, unrelated to her claims in this lawsuit, in May 2001 against a member of the City Council. (Doc. # 28, Ex. 2, p. 84; Ex. 10). Plaintiff claimed that a Councilman had told one of the Plaintiff's coworkers that she was not a moral person because she had mothered four children with four different fathers. (Doc. # 28, Ex. 2, p.80-82).

5

at 2072.

On the other hand, a hostile work environment claim, by nature, involves "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 122 S.Ct. at 2074 (quoting 42 U.S.C. § 2000e-5(e)(1)). Accordingly, as long as one "act contributing to the claim" occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability [even if some acts fall outside the statutory period." *Morgan*, 122 S.Ct. at 2074.[7]

Plaintiff filed her EEOC charge on February 28, 2002. (Doc. # 28, Ex. 1). Thus, in order for Plaintiff's hostile environment claim to be timely, at least one "act contributing to the claim" must have occurred on or after September 2, 2001. *Morgan*, 122 S.Ct. at 2074. Plaintiff's complaint alleges that the conduct constituting the alleged sexual harassment occurred "[o]n or about winter of 2000 and 2001" and "spring of 2001." (Doc. # 11). Moreover, Plaintiff admitted in her deposition that all of the alleged acts of sexual harassment of which the Plaintiff complains occurred before May 1, 2001:

> Q. Again, just so I'll understand it, everything that you say constituted sexual harassment occurred before May 1, before you filed the matter about Mr. Keeton; is that right?
> A. Before, yes.

(Doc. # 28, Ex. 2 , p. 369, 180-81). Finally, Plaintiff's brief in opposition to summary judgment concedes, "[t]he last act of harassment of a sexual nature occurred in May of 2001." (Doc. # 32, pg. 3). Therefore, both the undisputed facts and Plaintiff's own assertions in her brief demonstrate that

---

[7] Plaintiff's reliance on *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992), for the argument that the conduct complained of was "continuing in nature" and therefore was timely filed regardless of when the acts occurred, is off the mark in light of the more-recent *Morgan* opinion setting forth more specific guidelines for determining which claims are timely.

none of the alleged acts of sexual harassment occurred within the 180-day period.

Plaintiff argues, however, that she "has stated facts which constitute retaliation [within the 180-day period] from the same supervisor that was part of the sexual harassment episodes that occurred outside the 180-day time-period." (Doc. # 32, pg. 7). The court is not persuaded by this approach. The Supreme Court has made clear that retaliatory acts are separate, discrete acts which "start[] a new clock for filing charges alleging that act." *Morgan*, 122 S.Ct. at 2072. Plaintiff cannot include as part of her hostile environment claim allegedly retaliatory acts which undisputedly were not of a sexual nature.

Consequently, the Plaintiff failed to meet a precondition to her lawsuit in this court and this is fatal to her Title VII hostile environment claim. Accordingly, the City is entitled to a judgment as a matter of law with respect to this claim.

**B.    Title VII Retaliation**

To establish a prima facie case of retaliation under Title VII, Plaintiff must prove (1) she participated in an activity protected by Title VII; (2) *she suffered an adverse personnel action*; and (3) there is a causal link between the protected activity and the adverse employment action. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998).

Plaintiff describes her supervisor's alleged retaliatory acts as follows: (1) she stopped speaking to Plaintiff and began giving her written instructions; (2) she helped to clean up water spilled on Plaintiff's desk and threw away one of Plaintiff's checks as part of the clean-up; (3) she asked Plaintiff to look through mail in a sarcastic manner; (4) she began checking Plaintiff's time

cards when she had not previously done so.[8] Plaintiff did not lose any pay or benefits because of these alleged acts of retaliation, nor was Plaintiff disciplined as a result of or in connection with any of these occurrences. (Doc. # 28, Ex. 2 , p. 418). In fact, Plaintiff testified that she believed that the conduct was "rude" or "offensive" to her. (Doc. # 28, Ex. 2, p. 225).

The above-described acts simply do not amount to an "adverse personnel action" cognizable under Title VII. Courts have uniformly held that to establish a prima facie case of discrimination or retaliation a plaintiff must establish, as part of her prima facie case, that she suffered an adverse employment action. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000); *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir.1999); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir.1997); *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1452 (11th Cir. 1998); *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994). To make that showing, Plaintiff must show a *serious and material change* in the terms, conditions or privileges of employment. *Davis v. Town of Lake Park*, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001). She has not met this burden.

"Title VII[ ] is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'" *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (citation omitted). The actions Plaintiff complains about in this case are similar to those in

---

[8] For the first time in her brief in opposition to summary judgment – and without citation to the record – Plaintiff makes the assertion, "Our plaintiff states in her deposition that as a result of the retaliation, she resigned." (Doc. # 32, pg. 8). It is not clear to the court whether Plaintiff is merely trying to underscore the extent to which she allegedly suffered as a result of the retaliatory conduct, or whether Plaintiff is actually claiming that her resignation was a retaliatory adverse employment action, *i.e.,* that she was constructively discharged. Regardless, the court finds that the Rule 56 evidence does not come close to suggesting that Plaintiff's "working conditions were so intolerable that a reasonable person in h[er] position would have been compelled to resign." *Hipp v. Liberty Nat'l Life Ins.*, 252 F.3d 1208, 1231 (11th Cir. 2001).

occurrences in *Bass v. Board of County Com'rs, Orange County, Fla.*, 256 F.3d 1095 (11th 2001), which the Eleventh Circuit determined fell far short of an adverse employment action. *Bass*, 256 F.3d at 1117. For the same reasons as the Eleventh Circuit stated in *Bass*, this court finds that Plaintiff has failed to establish a prima facie case because she has not suffered a serious and material change in the terms or conditions of her employment. Summary judgment is therefore appropriate on Plaintiff's retaliation claim.[9]

### C.   § 1983 Equal Protection Claim

Because § 1983 claims cannot be pursued against a municipality under a theory of *respondeat superior*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1977), Plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 398 (1997). In this case, Plaintiff claims that the City had "a policy condoning or endorsing sexual harassment or sexual assault by City employees" which amounted to a violation of her right to equal protection under the Fourteenth Amendment. (Doc. # 11).

According to the Eleventh Circuit, a § 1983 claim against a municipality requires that Plaintiff establish that the municipality officially sanctioned or ordered the sexual harassment *and* that the action was taken with "deliberate indifference" to the obvious consequences it would likely have on the rights of the Plaintiff. *Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir.2000). Plaintiff's § 1983 claim in this case focuses on allegations that "Plaintiff reported the

---

[9] Moreover, even if these incidents did rise to the level of an adverse employment action, there is no evidence establishing a causal link between Plaintiff's complaints and her supervisor's actions, nor is there any evidence of retaliatory intent. Plaintiff admits that her supervisor had the right to give her written instructions, (Doc. # 28, Ex. 2, p. 160-61), just as she presumably had the right to check Plaintiff's time cards. Moreover, there is nothing to suggest that the misplaced check and the sarcastic tone were anything other than events which had nothing to do with Plaintiff's complaints of harassment.

[sexual harassment] incident to the Court Clerk and the Chief of Police (and attempted to report it to the mayor) and nothing was done." (Doc. # 32, p. 11). In cases such as this, the Supreme Court has equated deliberate indifference with "an official decision not to remedy the violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291(1998).

    The undisputed facts in this case do not support a finding that the City "officially decided" not to remedy any alleged sexual harassment. Plaintiff claims that she verbally complained about the alleged sexual harassment for the first time in May 2001. (Doc. # 31, Ex. 3; Doc. # 28, Ex. 2 , p. 158 -159). It is undisputed that after May 2001, no further incidents of alleged sexual harassment occurred and Plaintiff was never again asked by her supervisor to do any of the things about which she had complained. (Doc. # 28, Ex. 2 , p. 159, 225). At the time of her alleged verbal complaints, Plaintiff never followed up with a written grievance about her allegations, even though Plaintiff undisputedly knew in May 2001 that she had the right to file a written grievance (as demonstrated by the fact that Plaintiff *did file* an unrelated grievance against a City Council member in that same month). (Doc. # 28, Ex. 2, p. 80-82). In fact, Plaintiff put her sexual harassment complaints in writing for the first time five months later on September 27, 2001, when she resigned and contemporaneously filed a grievance with the City alleging sexual harassment and retaliation. (Doc. # 28, Ex. 2 , p. 148-49). It is further undisputed that, upon receipt of Plaintiff's grievance, the City conducted a thorough investigation of Plaintiff's claims, including interviews of City employees and officials and a 145-page sworn statement by the Plaintiff to the City attorneys. (Doc. # 28, Ex. 7; Ex. 2, p. 204; Ex. 13).

    Given these facts, and drawing all reasonable inferences in favor of Plaintiff, the court finds that Plaintiff has failed to create a genuine issue of material fact that the City acted with deliberate

indifference to Plaintiff's claims of sexual harassment. After Plaintiff verbally complained about the alleged harassment, she suffered no further incidents. After Plaintiff complained in writing about the alleged harassment, the City conducted a thorough investigation of her claims even though she had already resigned her employment. Summary judgment is due to be granted on Plaintiff's § 1983 claim.

### IV.   Conclusion

For the reasons stated above, Defendant's motion for summary judgment is due to be granted. The court finds that no genuine issues of material fact remain for trial and that Defendant is entitled to judgment as a matter of law. A separate Final Judgment will be entered.

**DONE** and **ORDERED** this ___18th___ day of August, 2004.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE